UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>GUSTAVO DE AVILA MOREIRA FARINHA (1),<br>TATIANE PEREIRA ARANTES (2),<br>NATALIA MAGALHAES ROCHA (3),<br>LEONARDO TRULSEN DE OLIVEIRA (4),<br><br>■■■■■■■■■■■<br><br>Defendants. | Case No.  **'21 MJ1891**<br><br>COMPLAINT FOR VIOLATION OF<br><br>Title 18, U.S.C., Sec. 1349 –<br>Conspiracy to Commit Wire<br>Fraud; Title 18, U.S.C., Secs.<br>1956(h), 1956(a)(1)(a)(i) and<br>(b)(i) – Conspiracy to Launder<br>Monetary Instruments; Title 18,<br>U.S.C., Sec. 1028A – Aggravated<br>Identity Theft; Title 18,<br>U.S.C., Secs. 981(a)(1)(C) and<br>982(a)(1), and Title 28,<br>U.S.C., Sec. 2461(c) – Criminal<br>Forfeiture |

The undersigned complainant being duly sworn states:

At all times relevant to this Complaint:

### INTRODUCTION

1.    Delivery Company A is an e-commerce company founded in 1994 and based in Bellevue, Washington that operates, among other things, an online package, food and grocery delivery service.  To become a driver for Company A, applicants must be 21 years or older, have a social security number, pass a background check, have a valid driver's license, have access to a qualifying vehicle, show proof of auto insurance, and have a compatible mobile phone.

//

PKM:PKM:5/12/21

2.     Rideshare Company B is a ride-hailing company founded in 2009 and based in San Francisco, California that connects drivers with riders via a mobile phone application ("app").  To become a driver for Company B, applicants must have the minimum age to drive, have at least one year of licensed driving in the US (or three years if under 23 years old), have a valid U.S. driver's license, and use an eligible 4-door vehicle. Applicants are required to show proof of a valid U.S. driver's license, proof of residence in the applicant's city, proof of vehicle insurance, and driver profile photo.

3.     Delivery Company C is an online food and grocery ordering and delivery service founded in 2012 and based in San Francisco, California. To become a driver for Delivery Company C in California, applicants must be at least 18 years old, be eligible to work in the United States, have a valid driver's license and regular access to a registered vehicle, have a smartphone, and pass a background check.   As part of the application process, applicants provide a photo of their driver's license and a driver profile photo.

4.     Delivery Company D is an online food and grocery ordering and delivery service founded in 2013 and based in San Francisco, California. To become a driver for Company D in California, applicants must be at least 18 years old (and at least 21 years old to deliver alcohol), be eligible to work in the United States, have access to a vehicle, and have a smartphone.

5.     Delivery Company E is an online food ordering and delivery service founded in 2011 and based in San Francisco, California.   To become a driver for Company E, applicants must be at least 18 years old (and at least 21 years old to deliver alcohol), be eligible to work in the United States, have access to a vehicle, and have a smartphone.

1     6.    Rideshare Company F is a ride-hailing company founded in 2012 and based in San Francisco, California that connects drivers with riders via a mobile phone app.  To become a driver for Company F in California, applicants must have a valid California driver's license ("CADL"), have one year of driving experience and be 25 or older, pass a driver screening, and provide documentary proof of California vehicle insurance, a driver profile photo, and proof of vehicle inspection.

7.    Delivery Company G is an online food ordering and delivery service founded in 2004 and based in Chicago, Illinois.  To become a driver for Delivery Company G in California, applicants must be at least 19 years old, own a compatible mobile phone, have a data plan, and have a checking account for direct deposit.  In addition, applicants using a vehicle to deliver must also have a valid driver's license for at least two years and have automobile insurance.

8.    Collectively, Delivery Companies A, C, D, E, and G and Rideshare Companies B and F are the "Rideshare/Delivery Companies."

9.    The application process for the Rideshare/Delivery Companies are each initiated by filing out an online form either through a computer browser on a computer or mobile phone connected to the internet or alternatively through a dedicated smartphone mobile application operated by the respective Rideshare/Delivery Companies.  The application materials, including photographs of any required identification documents, driver's licenses, driver selfies, insurance paperwork, and other documents demonstrating an applicant's eligibility to operate on the desired platform, are then transmitted through the internet from the applicant's computer or mobile phone to the Rideshare/Delivery Companies, who in turn process the application.

//

1    10.   Moreover, once an applicant-driver is approved to work on the
2  Rideshare/Delivery Companies' respective platforms, approved drivers
3  must use the Rideshare/Delivery Companies' mobile phone applications to
4  connect the driver to the Rideshare/Delivery Companies' internet-based
5  platforms.   These platforms send data regarding potential "gigs," such
6  as a delivery or a ride to be performed by the driver, over the internet
7  via the Rideshare/Delivery Companies' mobile phone application to the
8  driver, where the driver can accept or reject each offered gig.   When
9  accepted, the mobile phone applications then further communicate details
10  regarding the gig, including the locations where the driver must travel
11  to pick up the intended cargo, and the destination where the cargo must
12  be delivered.   These transmissions are done through the transmissions
13  over telecommunications and internet networks to the driver.

14    11.   In addition, customers of the Rideshare/Delivery Companies
15  must use a browser on a computer or mobile phone connected to the
16  internet or alternatively a dedicated smartphone mobile application
17  operated by the respective Rideshare/Delivery Companies to connect to
18  the respective platforms and to order the desired service and/or
19  delivery.   These orders are then transmitted via the internet to the
20  Rideshare/Delivery Companies, who in turn use their respective platforms
21  to connect the customer orders via the internet and through their mobile
22  applications with approved drivers.

## COUNT 1

### (Conspiracy to Commit Wire Fraud)

### [18 U.S.C. § 1349]

26    12.   Paragraphs 1 to 8 are re-alleged and incorporated herein.

### THE CONSPIRACY

28    13.   Beginning on a date unknown, but no later than June 2018, and

4

continuing up to and including the date of this Complaint, within the Southern District of California and elsewhere, defendants GUSTAVO DE AVILA MOREIRA FARINHA, TATIANE PEREIRA ARANTES, NATALIA MAGALHAES ROCHA, LEONARDO TRULSEN DE OLIVEIRA, ████████████████████████ together with each other and with others known and unknown, knowingly and intentionally conspired to commit wire fraud, in violation of Title 18, United States Code, Section 1343, that is, to devise a material scheme and artifice to defraud and to obtain money and property by means of materially false and fraudulent pretenses, representations, and promises, and, for the purpose of executing such scheme and artifice, to transmit and cause to be transmitted by means of wire communications in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds.

**MANNER AND MEANS**

14. Members of the conspiracy used the following manner and means, among others, to accomplish the objects of the conspiracy:

a. Defendants GUSTAVO DE AVILA MOREIRA FARINHA, TATIANE PEREIRA ARANTES, NATALIA MAGALHAES ROCHA, LEONARDO TRULSEN DE OLIVEIRA, ████████████████████████, and others known and unknown, conspired with one another and with others known and unknown to create fraudulent driver accounts with the Rideshare/Delivery Companies, and to use, rent or sell the accounts to individuals who might not otherwise qualify to drive for those services. This included:

i. Obtaining images of victims' driver's licenses, or the information on victims' driver's licenses, and Social Security Numbers from various sources.

ii. Creating accounts to drive for the Rideshare/Delivery Companies using those stolen identifiers and/or

1  identification documents;

2            iii. Using, renting, and/or selling those accounts,
3  including to people who might not otherwise qualify to drive for the
4  Rideshare/Delivery Companies;

5            iv. Causing the Rideshare/Delivery Companies to
6  generate Internal Revenue Service Forms 1099 in the names of the identity
7  theft victims for income they never earned; and

8            v.  Using fake driver accounts for the purpose of
9  referring other drivers to the Rideshare/Delivery Companies, and then
10 collecting referral bonusses from the companies for additional fake
11 accounts that the conspirators created.

12       b.   In renting and selling accounts, the defendants either
13 had payments from the Rideshare/Delivery Companies deposited directly
14 into their accounts, and then transferred payments to the subjects using
15 the fraudulent accounts, and collected rental payments from others to
16 allow the fraudulent accounts to be used by others. Defendants also
17 personally used fraudulent accounts and collected payments from the
18 Rideshare/Delivery Companies directly.

19 All in violation of Title 18, United States Code, Section 1349.

20                         **COUNT 2**

21          **(Conspiracy to Launder Monetary Instruments)**

22                    **[18 U.S.C. §§ 1956(h)]**

23  15.  Paragraphs 1 through 8 are re-alleged and incorporated herein.

24                       **THE CONSPIRACY**

25  16.  Beginning on a date unknown, but at least since June 2018, up
26 to and including the date of this Complaint, in the Southern District
27 of California and elsewhere, the defendants GUSTAVO DE AVILA MOREIRA
28 FARINHA, TATIANE PEREIRA ARANTES, NATALIA MAGALHAES ROCHA, LEONARDO

1  TRULSEN DE OLIVEIRA, ███████████████████████ and others
2  known and unknown, did knowingly combine, conspire, and agree with each
3  other and with other persons known and unknown to commit offenses against
4  the United States in violation of Title 18, United States Code, Section
5  1956, to wit:

6          a.  to knowingly conduct and attempt to conduct a financial
7  transaction affecting interstate and foreign commerce, which involved
8  the proceeds of a specified unlawful activity, that is conspiracy to
9  commit wire fraud, with the intent to promote the carrying on of
10 specified unlawful activity, and that while conducting and attempting
11 to conduct such financial transactions, knew that the property involved
12 in the financial transactions represented the proceeds of some form of
13 unlawful activity, in violation of Title 18, United States Code, Section
14 1956(a)(1)(A)(i); and

15         b.  to knowingly conduct and attempt to conduct financial
16 transactions affecting interstate commerce and foreign commerce, which
17 transactions involved the proceeds of specified unlawful activity, that
18 is, conspiracy to commit wire fraud, knowing that the transactions were
19 designed in whole or in part to conceal and disguise the nature,
20 location, source, ownership, and control of the proceeds of specified
21 unlawful activity, and that while conducting and attempting to conduct
22 such financial transactions, knew that the property involved in the
23 financial transactions represented the proceeds of some form of unlawful
24 activity, in violation of Title 18, United States Code, Section
25 1956(a)(1)(B)(i).

26 All in violation of Title 18, United States Code, Section 1956(h).
27 //
28 //

7

1

2

3

## COUNTS 3-17

### Aggravated Identity Theft

### [18 U.S.C. § 1028A]

4    17.   Paragraphs 1 through 8 are re-alleged and incorporated herein.

5    18.   On or about the dates set forth below, within the Southern

6  District of California and elsewhere, during and in relation to a felony

7  violation of 18 U.S.C. § 1349 (conspiracy to commit wire fraud), the

8  defendant listed in the table below knowingly used, without legal

9  authority, the means of identification, that is, the names, dates of

10  birth and driver's license numbers, of the following specified

11  individuals, knowing that the means of identification belonged to

12  another actual person:

13

| Count | Defendant(s) | Approx. Date | Actual Person (Initials) | Document/ Identifier | Statement of Facts ¶ |
|-------|--------------|--------------|--------------------------|----------------------|----------------------|
| 3 | DE AVILA | 2018-06-13 | J.M.C. | CA Driver's License ("CADL") | ¶ 40 |
| 4 | DE AVILA | 2018-08-18 | N.M.P. | CADL | ¶ 42 |
| 5 | PEREIRA | 2019-04-25 | S.A.S. | CADL | ¶ 45 |
| 6 | TRULSEN | 2020-02-04 | J.H. | Name, Date of Birth ("DOB") | ¶ 86 |
| 7 | DE AVILA, ▆ | 2020-04-11 | M.D.J.H.D. | CADL | ¶ 93 |
| 8 | TRULSEN | 2020-04-20 | C.J.C. | Name, DOB | ¶ 87 |
| 9 | DE AVILA | 2020-05-01 | F.F. | CADL | ¶ 60 |
| 10 | PEREIRA | 2020-05-27 | E.L.A. | CADL | ¶ 52 |
| 11 | ROCHA, ▆ | 2020-05-28 | M.L.L. | Name, DOB | ¶ 80 |
| 12 | DE AVILA, PEREIRA | 2020-06-01 | G.G. | CADL | ¶ 69 |
| 13 | DE AVILA | 2020-08-10 | C.M.C. | CADL | ¶ 73 |

8

| Count | Defendant(s) | Approx. Date | Actual Person (Initials) | Document/ Identifier | Statement of Facts ¶ |
|-------|--------------|--------------|--------------------------|----------------------|----------------------|
| **14** | ROCHA | 2020-09-03 | P.A.S. | CADL | ¶ **82** |
| **15** | DE AVILA, PEREIRA, TRULSEN | 2020-09-16 | L.C.E. | CADL | ¶ **56** |
| **16** | PEREIRA | 2020-12-07 | I.R.R.I. | CADL | ¶ **65** |
| **17** | DE AVILA | 2020-12-08 | I.T.H. | CADL | ¶ **66** |

## CRIMINAL FORFEITURE

19.    The allegations contained in Counts 1 and 2 are realleged herein and incorporated as a part hereof for purposes of seeking forfeiture to the United States pursuant to Title 18, United States Code, Sections 981(a)(1)(C), 982(a)(1), and 982(b) and Title 28, United States Code, Section 2461(c).

20.    Upon conviction of one or more of the offenses set forth in Counts 1 through 17, defendants GUSTAVO DE AVILA MOREIRA FARINHA, TATIANE PEREIRA ARANTES, NATALIA MAGALHAES ROCHA, LEONARDO TRULSEN DE OLIVEIRA, ██████████████████████████████ shall forfeit to the United States of America, pursuant to Title 18, United States Code, Section 981(a)(1)(C) and Title 28, United States Code, Section 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the offenses.

If any of the above forfeitable property, as a result of any act or omission of defendants:

      a.    cannot be located upon the exercise of due diligence;

      b.    has been transferred or sold to, or deposited with, a third person;

      c.    has been placed beyond the jurisdiction of the Court;

      d.    has been substantially diminished in value;

1          e.    or has been commingled with other property which cannot

2                be subdivided without difficulty;

3  it is the intent of the United States, pursuant to Title 21, United

4  States Code, Section 853(p) and Title 28, United States Code, Section

5  2461(c), to seek forfeiture of any other property of defendants up to

6  the value of the above forfeitable property.

7  All pursuant to Title 18, United States Code, Section 981(a)(1)(C),

8  982(a)(1) and (b)(1), and Title 28, United States Code, Section 2461(c).

9

10 The complainant states that this complaint is based on the attached

11 Statement of Facts incorporated herein by reference.

12

13                                        Special Agent Kevin Day

14                                        Homeland Security Investigations

15

16 Sworn and attested under oath by telephone, in accordance with Federal

17 Rule of Criminal Procedure 4.1, this 12th day of May 2021.

18

19

20                                        Hon. Jill L. Burkhardt

                                          United States Magistrate Judge

21

22

23

24

25

26

27

28

1

**STATEMENT OF FACTS**

2      21.   From 2020 until the present, Homeland Security Investigations
3  ("HSI") has been investigating a multifaceted fraud scheme that exploits
4  gig-economy platforms to make money.  The gig-economy is a labor market
5  characterized by the prevalence of short-term contracts or  freelance
6  work as opposed to permanent jobs.  This includes rideshare companies
7  that offer private car rides and food and delivery services, that link
8  up with restaurants to offer food and grocery delivery services to
9  consumers.  Over the past few years, internet and app-based services
10 that are staples in the gig-economy have seen significant growth.  During
11 the pandemic, that growth, especially among food and grocery delivery
12 services, has been exponential as lockdowns forced restaurants to
13 anticipate and react to the changing environment.  Beginning on a date
14 unknown, but at least since June 2018 and continuing up to and including
15 the date of this Complaint, defendants GUSTAVO DE AVILA MOREIRA FARINHA
16 ("DE  AVILA")  and  TATIANE  PEREIRA  ARANTES  ("PEREIRA")  have  led  an
17 organized  criminal  effort  to  steal  the  identities  of  customers
18 ("victims") of rideshare and food delivery services, including those
19 provided by Delivery Company A, Rideshare Company B, Delivery Company
20 C, D, E, Rideshare Company F, and Delivery Company F, to create driver
21 accounts on those same and other platforms, and to use, sell, and/or
22 rent these accounts with stolen identities to make money.

23      22.   Under the umbrella of the gig-economy are several companies
24 relevant to this Complaint:

25           a.   Delivery Company A is an e-commerce company founded in
26 1994 and based in Bellevue, Washington that operates, among other things,
27 an online package, food and grocery delivery service.  To become a driver
28 for Company A, applicants must be 21 years or older, have a social

11

security number, pass a background check, have a valid driver's license, have access to a qualifying vehicle, show proof of auto insurance, and have a compatible mobile phone.

b.    Rideshare Company B is a ride-hailing company founded in 2009 and based in San Francisco, California that connects drivers with riders via a mobile phone application ("app").  To become a driver for Company B, applicants must have the minimum age to drive, have at least one year of licensed driving in the US (or three years if under 23 years old), have a valid U.S. driver's license, and use an eligible 4-door vehicle.  Applicants are required to show proof of a valid U.S. driver's license, proof of residence in the applicant's city, proof of vehicle insurance, and driver profile photo.

c.    Delivery Company C is an online food and grocery ordering and delivery service founded in 2012 and based in San Francisco, California.  To become a driver for Delivery Company C in California, applicants must be at least 18 years old, be eligible to work in the United States, have a valid driver's license and regular access to a registered vehicle, have a smartphone, and pass a background check.  As part of the application process, applicants provide a photo of their driver's license and a driver profile photo.

d.    Delivery Company D is an online food and grocery ordering and delivery service founded in 2013 and based in San Francisco, California.  To become a driver for Delivery Company D in California, applicants must be at least 18 years old (and at least 21 years old to deliver alcohol), be eligible to work in the United States, have access to a vehicle, and have a smartphone.

e.    Delivery Company E is an online food ordering and delivery service founded in 2011 and based in San Francisco, California.

To become a driver for Delivery Company E, applicants must be at least 18 years old (and at least 21 years old to deliver alcohol), be eligible to work in the United States, have access to a vehicle, and have a smartphone.

f.    Rideshare Company F is a ride-hailing company founded in 2012 and based in San Francisco, California that connects drivers with riders via a mobile phone app.  To become a driver for Company F in California, applicants must have a valid California driver's license ("CADL"), have one year of driving experience and be 25 or older, pass a driver screening, and provide documentary proof of California vehicle insurance, a driver profile photo, and proof of vehicle inspection.

g.    Delivery Company G is an online food ordering and delivery service founded in 2004 and based in Chicago, Illinois.  To become a driver for Delivery Company G in California, applicants must be at least 19 years old, own a compatible mobile phone, have a data plan, and have a checking account for direct deposit.  In addition, applicants using a vehicle to deliver must also have a valid driver's license for at least two years and have automobile insurance.

23.  Collectively, Delivery Companies A, C, D, E, and G and Rideshare Companies B and F are the "Rideshare/Delivery Companies."

24.  Key to this scheme and to the detriment of the victims, the conspirators have exploited the verification and fraud prevention mechanisms of the gig-economy platforms, such as those of the Rideshare/Delivery Companies.  In addition to having their identities stolen, the victims often suffer harm because their identities are used without their knowledge to rack up multiple Internal Revenue Service Forms 1099 showing taxable income—income the victims are neither aware of nor actually earned.

25. Before discussing the scheme, a discussion of the gig economy provides important background. In a gig economy, large numbers of people work in part-time or temporary positions or as independent contractors to provide services typically provided by larger companies. A wide variety of positions fall into the category of a gig. The work can range from driving a vehicle, such as Rideshare Company B or Rideshare Company F driver, to providing lodging. The gig economy also includes food and grocery delivery services, such as Delivery Companies A, C, D, E and G, and others. These companies connect restaurants, grocery, drug and other retail stores with customers, who can use the respective apps to order food and other items online for curbside pickup or delivery.

26. Of course, during the COVID-19 pandemic, usage of many of these types of services has dramatically increased as customers have taken precautions and as restaurants have been forced to adapt to shutdowns and other restrictions. According to a recent Forbes article, online grocery purchases have jumped to 10% of the $1 trillion grocery industry, more than triple what they were at the end of 2019. Food delivery services, such as Delivery Company G, which saw a 48% increase in revenue in 2020 over 2019, and other similar platforms, have similarly seen astronomic growth over the past year as restaurants have had to adapt to provide more delivery services during the pandemic.

27. Since at least Spring 2020, the conspirators have also significantly increased use of fraudulent accounts on platforms operating by the Delivery Companies. Based on the investigation thus far, in the Southern District of California and elsewhere, the defendants conspired with one another and with others known and unknown to create fraudulent driver accounts with the Rideshare/Delivery Companies and to use, rent, and/or sell the accounts to individuals who might not

1 otherwise qualify to drive for those services.  The evidence from this
2 investigation indicates that the scheme included the following:

3       a.     Obtaining images of victims' driver's licenses, or the
4 information on victims' driver's licenses, and other personally
5 identifying information;

6       b.     Creating accounts to drive for the Rideshare/Delivery
7 Companies using those stolen identifications and/or identifiers;

8       c.     Using, renting and/or selling those accounts, including
9 to people who might not otherwise qualify to drive for the
10 Rideshare/Delivery Companies;

11       d.     Using fake driver accounts for the purpose of referring
12 other driver accounts to the Rideshare/Delivery Companies, and then
13 collecting referral bonuses from the companies for fake accounts the
14 conspirators created;

15       28.   To use, rent, and/or sell accounts, the conspirators either
16 had payments from the Rideshare/Delivery Companies deposited directly
17 into their accounts, or they received payments from others representing
18 proceeds from the rental and/or sale of these driver accounts.    In
19 creating fraudulent accounts, the conspirators often replaced the photos
20 of a victim's driver's license with either one of the defendants' photos
21 or of known and unknown co-conspirators who used these accounts.

22       29.   Once proceeds from the fraudulent scheme have been deposited
23 to one of the conspirator's bank accounts, the conspirator then can use
24 that money to pay for expenses to promote the scheme, such as car
25 payments, car insurance, gas, vehicle maintenance, and other similar
26 expenses, or they attempt to conceal and disguise the source of these
27 fraudulently obtained deposits by sending money through electronic
28 deposits and peer-to-peer money services to other members of the

conspiracy. I have also observed instances where deposits made by the Rideshare/Delivery Companies to a conspirators' account results in a contemporaneous and corresponding money transfer to another co-conspirator. In many instances, the deposits received the conspirator and the corresponding peer-to-peer money transfer are even in the identical amounts.

30.  Notwithstanding the conspirators' efforts to conceal their fraudulent scheme, I have identified close to 100 victims whose identities were stolen and used, some repeatedly and across multiple platforms, and I suspect there are many more unidentified victims.

**DEFENDANTS**

31.  GUSTAVO DE AVILA MOREIRA FARINHA ("DE AVILA"), a Brazilian national residing in San Diego, California.

32.  TATIANE PEREIRA ARANTES ("PEREIRA"), a Brazilian national residing in San Diego, California.

33.  NATALIA MAGALHAES ROCHA ("ROCHA"), a Brazilian national residing in San Diego, California.

34.  LEONARDO TRULSEN DE OLIVEIRA ("TRULSEN"), a Brazilian national residing in San Diego, California.

35.  ███████████████████████████████████ a Brazilian national residing in ██████████████████

36.  The application process for the Rideshare/Delivery Companies are each initiated by filing out an online form either through a computer browser on a computer or mobile phone connected to the internet or alternatively through a dedicated smartphone mobile application operated by the respective Rideshare/Delivery Companies. The application materials, including photographs of any required identification documents, such as driver's licenses, driver selfies (self-taken

16

1  photographs of the applicant), insurance paperwork, and other documents
2  demonstrating an applicant's eligibility to operate on the desired
3  platform, are then transmitted through the internet from the applicant's
4  computer or mobile phone to the Rideshare/Delivery Companies, who in
5  turn process the application.

6      37.   Moreover, once an applicant-driver is approved to work on the
7  Rideshare/Delivery Companies' respective platforms, approved drivers
8  must use the Rideshare/Delivery Companies' mobile phone applications to
9  connect the driver to the Rideshare/Delivery Companies' internet-based
10 platforms.   These platforms send data regarding potential "gigs," such
11 as a delivery or a ride to be performed by the driver, over the internet
12 via the Rideshare/Delivery Companies' mobile phone application to the
13 driver, where the driver can accept or reject each offered gig.   When
14 accepted, the mobile phone applications then further communicate details
15 regarding the gig, including the locations where the driver must travel
16 to pick up the intended cargo, and the destination where the cargo must
17 be delivered.   These transmissions are done through the transmissions
18 over telecommunications and internet networks to the driver.

19     38.   In addition, customers of the Rideshare/Delivery Companies
20 must use a browser on a computer or mobile phone connected to the
21 internet, or alternatively a dedicated smartphone mobile application
22 operated by the respective Rideshare/Delivery Companies, to connect to
23 the respective platforms and to order the desired service and/or
24 delivery.   These orders are then transmitted via the internet to the
25 Rideshare/Delivery Companies, who in turn use their respective platforms
26 to connect the customer orders via the internet and through their mobile
27 applications with approved drivers.

28 //

1

**THE FRAUD BEGINS WITH RIDESHARE COMPANIES**

2   39.   Starting at a date unknown, but by at least June 2018, DE
3   AVILA and PEREIRA, who are a couple, began exploiting verification
4   systems of rideshare companies to create numerous accounts with
5   Rideshare Company B in the names and identities of other persons.

6   40.   **J.M.C. (Count 3)**.   On June 13, 2018, a Rideshare Company B
7   driver account in the name and identity of J.M.C. was established.
8   Between June 13, 2018 and May 18, 2019, the account did 1074 rideshares.
9   The account was associated to DE AVILA and PEREIRA's joint Wells Fargo
10   bank account ("JOINT-6463").   The driver account was created with the
11   driver selfie of DE AVILA and the unaltered CADL of J.M.C.

12   41.   **J.M.N.**   On August 16, 2018, a Rideshare Company B driver
13   account for J.M.N. was established. Between August 16, 2018 to September
14   4, 2018, the account did 196 rideshares. The account was associated with
15   DE AVILA's Bank of America account ("DE_AVILA-4858").   DE AVILA's vehicle
16   registration is also associated to the profile.   The selfie associated
17   with the account (Subject-1) and the driver's license photo (J.M.N.) are
18   not the same person.   Based on my review of DE_AVILA-4858, there are
19   also Zelle[1] money transfers between DE AVILA's DE_AVILA-4858 and a bank
20   account associated with Subject-1.   I am familiar with J.M.N.'s true
21   photo through a review of California DMV photos.

22   42.   **N.M.P. (Count 4)**.   On August 18, 2018, a Rideshare Company B
23   driver account in the name and identity of N.M.P. was established.
24   Between August 18, 2018 through July 4, 2019 that account did 974
25   rideshares.   The account was associated to DE AVILA and PEREIRA's JOINT-
26   6463.   The driver account was created with the driver selfie of DE AVILA

27

28   [1] Zelle is a digital, peer-to-peer payment network that works with most major U.S. banks.

1   and driver's license of N.M.P. but with N.M.P.'s driver's license photo
2   replaced with DE AVILA's own driver's license photo. I am familiar with
3   N.M.P.'s true photo through a review of California DMV photos.

4        43.   On October 25, 2018, DE AVILA created a Rideshare Company B
5   driver account in his own name.   Through January 28, 2020, he logged
6   3,997 rideshares.   His account was linked to his and PEREIRA's JOINT-
7   6463.   He used his own CADL and provided his own vehicle registration
8   and insurance paperwork. Through this and a review of other information,
9   including DE AVILA's CADL, I am familiar with DE AVILA's likeness.

10       44.   On February 21, 2019, PEREIRA created her own Rideshare
11  Company B account and linked it to her Bank of America account ("PEREIRA-
12  9122").   Through January 29, 2020, PEREIRA logged 1,349 rideshares.
13  During at least part of this period, PEREIRA was living in San Francisco,
14  California.   PEREIRA used her own driver's license and selfie, vehicle
15  registration, and insurance card.  The insurance card shows both PEREIRA
16  and DE AVILA are authorized drivers on DE AVILA's 2016 Mercedes-Benz
17  C300. Through this and a review of other information, including PEREIRA's
18  CADL, I am familiar with PEREIRA's likeness.

19       45.   **S.A.S.**   **(Count 5).**  On April 25, 2019, a Rideshare Company B
20  driver account for S.A.S. was established.   Between April 25, 2019 and
21  October 13, 2019, the account did 852 rideshares.   The account was
22  associated to DE AVILA and PEREIRA's JOINT-6463. DE AVILA's vehicle
23  registration is also associated to the driver profile.   The driver
24  account was created with a photo of S.A.S.'s unaltered driver's license.
25  The driver selfie, however, appears to be a photoshopped image of S.A.S.,
26  with PEREIRA's face superimposed.  You can tell by looking at the photo
27  which shows two faces merged.

28  //

19

46.  **G.G.R.J.**  On May 1, 2019, a Rideshare Company B driver account for G.G.R.J. was established.  Between May 1, 2019 and July 22, 2019, the account did 557 rideshares.  The account was associated to DE_AVILA-4858.  The driver's license photo is G.G.R.J.'s CADL, but with the driver photo replaced with the photo of Subject-2.  The driver selfie is also of Subject-2.  I have reviewed the true photo associated with G.G.R.J.'s CADL and G.G.R.J. and Subject-2 are different persons.

47.  **S.R.S.**  On May 20, 2019, a Rideshare Company B driver account for S.R.S. was established.  Between May 20, 2019 and September 24, 2019 the account did 650 rideshares.  The account was associated to DE AVILA and PEREIRA's JOINT-6463.  The driver account was created with the S.R.S's unaltered CADL.  The driver selfie, however, appears to be a photoshopped image of S.R.S., with what I believe to be PEREIRA's face superimposed.

48.  **A.J.T.**  On May 21, 2019, a Rideshare Company B driver account for A.J.T. was established.  Between May 21, 2019 to September 23, 2019 the account did 1397 rideshares.  The account was associated to JOINT-6463. The account was established using an altered photo of A.J.T.'s CADL with A.J.T.'s information, but with the driver photo replaced, but not the smaller watermark photo (which does show A.J.T.'s real photo). The selfie associated with the account and the altered CADL photo appear to be of the same person (Subject-3).  I have reviewed the true photo associated with A.J.T.'s CADL and A.J.T. and Subject-3 are different persons.

49.  **V.M.A.M.**  On July 24, 2019, a Rideshare Company B account for V.M.A.M was established.  Between July 24, 2019 to November 26, 2019, the account did 1354 rideshares. The account was associated to JOINT-6463.  DE AVILA's vehicle registration is also associated to the profile.

1  The account was established using V.M.A.M.'s CADL but with the driver
2  photo replaced with the photo of Subject-3. The selfie is also Subject-
3  3. I have reviewed the true photo associated with V.M.A.M.'s CADL and
4  V.M.A.M. and Subject-3 are different persons.

**THE PANDEMIC SHIFTS THE CONSPIRACY TO DELIVERY COMPANIES**

6       50.   In Spring 2020, with the Covid-19 pandemic in full swing and
7  Californians in a lockdown, the conspirators shifted away from Rideshare
8  Companies B and F, which saw a dramatic decrease in traffic[2], to food,
9  grocery and other delivery companies like Delivery Companies A, C, D,
10 E, and G, which saw a corresponding and precipitous increase in demand.
11 In April 2020, PEREIRA established a driver account with Delivery Company
12 C that was authorized to deliver alcohol to Delivery Company C customers.
13 The account was in PEREIRA's name, linked to her bank account, and used
14 her true identity and driver's license.

15      51.   As part of and in furtherance of the scheme, PEREIRA delivered
16 alcohol to customers.  While delivering alcohol, drivers of Delivery
17 Company C, and similarly the other Delivery Companies, are required to
18 confirm that the person to whom they are delivering is 21 or over by
19 checking an ID. I believe when PEREIRA checks a customer's ID, she then
20 took photographs of the IDs with her cellular phone. After the delivery,
21 DE AVILA, PEREIRA, or one of their co-conspirators created Delivery
22 Company C driver accounts (or an account on another platform) using the
23 customer-victim's name, DOB, the photo of the CADL, and other identifying
24 information contained on the driver's license--knowing of course that
25 person is a real person--but often with a doctored photo of the driver's

26
27 [2] For example, Rideshare Company B publicly reported that gross bookings
   on rides were down 75 percent in the three months through June 2020.
28 Rideshare Company F publicly reported that year-over-year ridership
   between April 2019 and April 2020 was down 75 percent.

1 license that replaced the victim's CADL photo with another person.
2 Sometimes the doctored photos were of DE AVILA, PEREIRA, or defendant
3 NATALIA MAGALHAES ROCHA. At other times, the doctored photo was one of
4 the other co-conspirators, or someone to whom the conspirators sold or
5 rented the newly created account using the stolen identity.

6 **ALCOHOL DELIVERIES LEAD TO STOLEN IDENTITIES AND FRAUDULENT ACCOUNTS**

7      52.   **E.L.A. (Count 10).** On May 27, 2020, PEREIRA delivered alcohol
8 through Delivery Company C to E.L.A. Two days later, on May 29, 2020,
9 a Delivery Company C Shopper account was created for E.L.A. with E.L.A.'s
10 home address but associated with PEREIRA's account PEREIRA-9122. The
11 Delivery Company C Shopper account was set up using E.L.A.'s CADL, but
12 with the driver photo replaced with the image of a male ("Subject-4").
13 Notably, E.L.A. is a female. The driver selfie also depicts Subject-4.
14 Beginning on June 6, 2020 and continuing until at least November 4,
15 2020, PEREIRA received deposits in her PEREIRA-9122 through a third
16 party payment processor service ("Payment Processor-1")[3] used by
17 Delivery Company C, for deliveries made by the Delivery Company C driver
18 account in the name E.L.A. Between June 10, 2020 and November 4, 2020,
19 PEREIRA received 17 deposits in PEREIRA-9122 from Payment Processor-1
20 for the "E.L.A." account totaling $5,825.30.

21      53.   **D.A.M.** On August 13, 2020, PEREIRA delivered alcohol through
22 Delivery Company C to D.A.M. at D.A.M.'s address. On August 24, 2020,
23 11 days later, a Delivery Company C Shopper account was created for
24 D.A.M. at DE AVILA and PERIERA's current home address in San Diego,
25 California and linked to PEREIRA-9122. The account was set up with

26
27 [3] Payment Processor-1 is a company that provides payment infrastructure
for Internet companies. The company deposits money earned by drivers
28 into the bank accounts associated with the account.

1  D.A.M.'s CADL, but with the driver photo replaced by the photo of
2  Subject-4 and the selfie of Subject-4. I have reviewed the true photo
3  associated with D.A.M.'s CADL and D.A.M. and Subject-3 are different
4  persons. Between October 7, 2020 and November 4, 2020, PEREIRA received
5  4 deposits from Payment Processor-1 or a payment processing service
6  associated with a major credit card processing company ("Payment
7  Processor-2") for the "D.A.M" Delivery Company C account totaling
8  $1,167.73.

9      54. **H.M.F.** On or about August 18, 2020, H.M.F. purchased alcohol
10  for home delivery from a large membership-only retail store through
11  Delivery Company C. On August 18, 2020, PEREIRA delivered the alcohol
12  through Delivery Company C to H.M.F. at H.M.F.'s address in San Diego,
13  California. On October 7, 2020, approximately 7 weeks later, a Delivery
14  Company C account was created for H.M.F. at an address that was not
15  linked to H.M.F. and to a bank account linked to DE AVILA's Bank of
16  America account ("DE_AVILA-4858"). Based on Delivery Company C records,
17  the H.M.F. account was referred by the E.L.A. account referenced above.
18  This referral earned DE AVILA and PEREIRA $1,500 in "referral bonuses."
19  The Delivery Company C account was set up using H.M.F.'s CADL, but with
20  the driver photo replaced with the image of Subject-4. Notably, H.M.F.
21  is a female. The driver selfie also depicts Subject-4. On November 4,
22  2020, DE AVILA received two deposits in DE_AVILA-4858 through Payment
23  Processor-1 for deliveries made by Delivery Company C account associated
24  with H.M.F., totaling $26.90. As mentioned above, this account also
25  earned the E.L.A. account $1,500 in a referral bonus.

26      55. **L.D.S.** On or about August 21, 2020, L.D.S. purchased alcohol
27  for home delivery from Vons in La Mesa, CA through Delivery Company C.
28  On August 21, 2020, PEREIRA delivered alcohol through Delivery Company

1  C to L.D.S. at L.D.S.'s home in Lakeside, California, which is in the
2  Southern District of California.  On October 7, 2020, approximately 7
3  weeks later, a Delivery Company C account was created for L.D.S. at an
4  address not associated with L.D.S. in San Diego, California, and linked
5  to DE_AVILA-4858.  Like the H.M.F. account above, this account was also
6  referred by the "E.L.A." account.  This referral once more earned DE
7  AVILA and PEREIRA a $1,500 referral bonus.

8       56.  **L.C.E.  (Count 15)**.  On or about September 16, 2020, L.C.E.
9  purchased alcohol from a membership-only retail store for home delivery
10 through Delivery Company C.  On September 16, 2020, PEREIRA delivered
11 alcohol through Delivery Company C to L.C.E. at L.C.E.'s home in San
12 Diego, California. On September 22, 2020, six days later, a Delivery
13 Company C account was created for L.C.E. at 8675 Lake Ashmere Dr, #24,
14 San Diego, CA, 92119, which is the previous address of LEONARDO TRULSEN
15 DE OLIVEIRA, ROCHA's boyfriend and a close friend of PEREIRA and DE
16 AVILA, and linked to DE_AVILA-4858. The profile was set up using L.C.E.'s
17 CADL, but with the photo replaced with Subject-4 and the profile selfie
18 of Subject-4.  I have reviewed the true photo for L.C.E.'s CADL and
19 L.C.E. is not the same person as Subject-4.  On October 14, 2020, DE
20 AVILA received deposits in DE_AVILA-4858 through Payment Processor-1 for
21 deliveries made by the Delivery Company C account in L.C.E.'s name.
22 During this time, these deposits totaled $59.13.

23      **FRAUDULENT ACCOUNTS ASSOCAITED WITH DE AVILA, PEREIRA'S ADDRESS**

24      57.  The investigation also revealed fraudulent Delivery Company C
25 accounts and other platform driver accounts that use DE AVILA and
26 PEREIRA's current address, 300 14th St., Unit #407, San Diego, CA 92101.
27 This is the address for the ALX luxury high-rise building in downtown
28 San Diego, California. Subpoenaed records from the leasing office

1 confirmed that DE AVILA and PEREIRA are currently tenants of Unit #407.

2     58.   These fraudulent accounts are associated with DE AVILA,
3 PEREIRA, and other co-conspirators, and like the examples given above,
4 involve the use of stolen identities. Beyond being associated with DE
5 AVILA and PEREIRA's home address, some of the accounts we identified are
6 linked to DE AVILA, PEREIRA through other links as well, such as photos
7 of known conspirators or subjects or links to the defendants' bank
8 accounts.

9     59.  **J.M.R.**  On or about March 23, 2020, a Delivery Company C
10 account was created in the name "Oldironside fakes" using the address
11 300 14th St #407, San Diego, CA, 92101, which is DE AVILA and PEREIRA's
12 home address, and the CADL for J.M.R. The profile was set up using this
13 J.M.R.'s CADL but with the driver photo replaced to be a photo of DE
14 AVILA.  The profile selfie is also of DE AVILA.  I have reviewed the
15 true photo of J.M.R. for his CADL and J.M.R. is a different person than
16 DE AVILA.

17     60.  **F.F. (Count 9)**. On May 1, 2020, a Delivery Company C account
18 was created for F.F. using the address 300 14th St #407, San Diego, CA,
19 92101, which is DE AVILA and PEREIRA's home address, and associated with
20 DE_AVILA-4858. The Delivery Company C account was set up using F.F.'s
21 CADL, but with the driver photo replaced with the image of Subject-4.
22 The driver selfie also depicts Subject-4. I have reviewed F.F.'s true
23 CADL photo and F.F. is not the same person as Subject-4.  From May 13,
24 2020 through October 1, 2020, DE AVILA received deposits in DE_AVILA-
25 4858 through Payment Processor-1 for deliveries made by the Delivery
26 Company C account F.F. totaling $5,793.58.

27     61.  **J.A.C.V.**  On May 15, 2020, a Delivery Company C account was
28 created for J.A.C.V. using the address 300 14th St #407, San Diego, CA,

25

92101, DE AVILA and PEREIRA's home address. The Delivery Company C account was set up using J.A.C.V.'s CADL, but with the driver photo replaced with the image of Subject-4. The driver selfie also depicts Subject-4. I have reviewed J.A.C.V.'s true CADL photo and J.A.C.V. is not the same person as Subject-4.

62. **D.D.A.** On May 17, 2020, a Delivery Company C account was created for D.D.A. using the address 300 14th St #407, San Diego, CA, 92101, DE AVILA and PEREIRA's home address. The Delivery Company C account was set up using D.D.A.'s CADL, but with the driver photo replaced with the image of Subject-4. The driver selfie also depicts Subject-4. I have reviewed D.D.A.'s true CADL photo and D.D.A. is not the same person as Subject-4.

63. **S.M.N.** On July 20, 2020, a Delivery Company C account was created for S.M.N. using the address 300 14th St #407, San Diego, CA, 92101, DE AVILA and PEREIRA's home address. The Delivery Company C account was set up using S.M.N.'s CADL, but with the driver photo replaced with the image of Subject-4. The driver selfie also depicts Subject-4. I have reviewed S.M.N.'s true CADL photo and S.M.N. is not the same person as Subject-4. Between August 5, 2020 and August 26, 2020, DE AVILA received deposits in DE_AVILA-4858 through Payment Processor-1 for deliveries made by the Delivery Company C account S.M.N. totaling $1,075.25.

64. **A.T.D.** On September 22, 2020, a Delivery Company C account was created for A.T.D. using the address 300 14th St #407, San Diego, CA, 92101, DE AVILA and PEREIRA's home address. The Delivery Company C account was set up using A.T.D.'s CADL, but with the driver photo replaced with the image of Subject-4. The driver selfie also depicts Subject-4. I have reviewed A.T.D.'s true CADL photo, and A.T.D. is not

1  the same person as Subject-4. A.T.D. is a female; Subject-4 is a male.

2       65.  **I.R.R.I. (Count 16)**. On December 7, 2020, a Delivery Company
3  C account was created for I.R.R.I. using the address 300 14th St Apt
4  407, San Diego, CA, 92101. The Delivery Company C account profile was
5  set up using this driver's license photo of I.R.R.I.'s CADL, but with
6  the driver photo replaced by PEREIRA's CADL driver photo.  The account
7  selfie is also of PEREIRA.  I have reviewed I.R.R.I.'s true CADL photo
8  and I.R.R.I. is a not the same person as PEREIRA.

9       66.  **I.T.H. (Count 17)**.  On December 8, 2020, a Delivery Company C
10  account was created for I.T.H. using the address 300 14th St Apt 407,
11  San Diego, CA, 92101. The Delivery Company C account profile was set up
12  using this driver's license photo of I.T.H.'s CADL, but with the driver
13  photo replaced by DE AVILA's CADL driver photo.  The account selfie is
14  also of DE AVILA.  I have reviewed I.T.H.'s true CADL photo and I.T.H.
15  is a not the same person as DE AVILA.

16       67.  **M.M.S.** On or about December 8, 2020, M.M.S. purchased alcohol
17  using Delivery Company A for delivery to her home located in La Jolla,
18  California.  On December 8, 2020, the Delivery Company A driver "G.G."
19  (discussed later below), and whose account is linked to DE_AVILA-4858,
20  delivered the alcohol to M.M.S.  The very next day, on December 9, 2020,
21  a Delivery Company C account was created for M.M.S. using the address
22  300 14th St #407, San Diego, CA, 92101, which is PEREIRA and DE AVILA's
23  address. The Delivery Company C account profile was set up using this
24  driver's license photo of M.M.S.'s CADL, but with the driver photo
25  replaced by PEREIRA's CADL driver photo.  The account selfie is also of
26  PEREIRA.  I have reviewed M.M.S.'s true CADL photo and M.M.S. is a not
27  the same person as PEREIRA.  On December 16, 2020, DE AVILA received
28  deposits in DE_AVILA-4858 through Payment Processor-1 for deliveries

1 | made by the Delivery Company C account for M.M.S. totaling $212.31.

2 | 68.  **P.K.M.**  On December 10, 2020, a Delivery Company C account was
3 | created for P.K.M. using the address 300 14th St Apt 407, San Diego,
4 | CA, 92101. The Delivery Company C account profile was set up using this
5 | driver's license photo of P.K.M.'s CADL, but with the driver photo
6 | replaced by DE AVILA's CADL driver photo.  The account selfie is also
7 | of DE AVILA.  I have reviewed P.K.M.'s true CADL photo and P.K.M. is a
8 | not the same person as DE AVILA.

9 | **OTHER ACCOUNTS DEPOSITING INTO DE AVILA AND PEREIRA'S BANK ACCOUNTS**

10 | 69.  **G.G. (Count 12)**. On June 1, 2020, a Delivery Company C account
11 | was created for G.G. using an address in Foster City, California.  The
12 | Delivery Company C account profile was set up using this driver's license
13 | photo of G.G.'s CADL, but with the driver photo replaced by Subject-5.
14 | The account selfie is also of Subject-5.  I have reviewed G.G.'s true
15 | CADL photo and G.G. is a not the same person as DE AVILA.  Between
16 | September 15, 2020 and December 11, 2020, both DE AVILA and PEREIRA
17 | received deposits into their respective Bank of America accounts
18 | (DE_AVILA-4858 and PEREIRA-9122) associated with G.G. These deposits
19 | were not from Delivery Company C, but were from Delivery Company A and
20 | Delivery Company D, and totaled $2,001.91 (see immediately below). As
21 | mentioned earlier, one of the alcohol deliveries done on the G.G. account
22 | with Delivery Company A was to M.M.S., whose identity was also stolen
23 | to create a fraudulent account.

24 | 70.  **G.G.**  G.G.'s identity was also used by DE AVILA to create a
25 | Delivery Company A driver account.  On November 20, 2020, Delivery
26 | Company A driver account in the name "G.G." was created.  This Delivery
27 | Company A account uses CADL and the same DOB as on G.G.'s CADL, which
28 | is the same information as used with G.G. account opened with Delivery

Company C.  The CADL number, date of birth and other information match the information for G.G.  This G.G. driver account is linked to DE_AVILA-4858 and lists the driver's vehicle make and model as a 2016 Mercedes-Benz C300.   That year, make and model are notable, because that make and model vehicle has been owned and/or operated by DE AVILA and PEREIRA during parts of this scheme. In fact, per Rideshare Company B records, PEREIRA used to drive on Rideshare Company B using a matching vehicle, which was registered to DE AVILA and insured in both DE AVILA and PEREIRA's names.   Between December 28, 2020 and January 15, 2021, DE AVILA received four deposits totaling $808.50 from Delivery Company A associated with the name G.G. in DE_AVILA-4858.

71.  **G.G.**  Once an identity was misappropriated, DE AVILA, PEREIRA and their co-conspirators could use the stolen identities on multiple platforms, thereby repeatedly victimizing an individual whose identity was stolen.  By way of example, I identified driver accounts in G.G.'s name and identity on Delivery Company A, Delivery Company C, and Delivery Company D.   Between September 15, 2020 and March 16, 2021, PEREIRA received 12 deposits to PEREIRA-9122 from Delivery Company D associated with the name G.G. totaling $652.44.

72.  **R.A.D.**  On July 30, 2020, a Delivery Company C account was created for R.A.D. using the address 8650 Lake Ashmere Dr #56, San Diego, CA, 92119, which is the current address of ROCHA and TRULSEN.  The Delivery Company C account was set up using R.A.D.'s CADL, but with the driver photo replaced with the image of Subject-4.   The driver selfie also depicts Subject-4. I have reviewed R.A.D.'s true CADL photo and R.A.D. is not the same person as Subject-4.  Notably, R.A.D. is a female, and Subject-4 is a male.  Between September 9, 2020 and September 23, 2020,  PEREIRA  received  deposits  in  PEREIRA-9122  through  Payment

1  Processor-1 for deliveries made by the Delivery Company C account
2  associated with R.A.D. totaling $491.83

3      73. **C.M.C.** **(Count 13).** On August 10, 2020, a Delivery Company C
4  account was created for C.M.C. using the address 1610 Glorietta Blvd #4,
5  Coronado, CA 92118, an address that my investigation was able to
6  associate with ROCHA.  The Delivery Company C account was set up using
7  C.M.C.'s CADL, but with the driver photo replaced with the image of
8  Subject-4. The driver selfie also depicts Subject-4. Through open source
9  research, I located a UCSD collegiate athlete profile associated to the
10 name and likeness of C.M.C. I have also reviewed C.M.C.'s true CADL
11 photo, and C.M.C. is not the same person as Subject-4.  Notably, C.M.C.
12 is a female, and Subject-4 is a male. Between August 26, 2020 and October
13 7, 2020, PEREIRA received seven deposits in DE_AVILA-4858 from Payment
14 Processor-1 totaling $3,320.73 in the name of C.M.C.

15                  **ADDITIONAL FRAUDULENT ACCOUNTS LINKED TO ROCHA**

16     74.  In addition to the accounts outlined already above, ROCHA also
17 had multiple accounts with various of the Rideshare/Delivery Companies
18 linked to her, including some with her own photo as the driver.

19     75. **F.D.O.V.** On December 6, 2019, a Delivery Company D account for
20 F.V. was created using F.D.O.V.'s DOB. The account had no physical
21 address listed. The account was associated with ROCHA's JPMorgan Bank
22 account ("ROCHA-8279").   The account made deliveries from December 6,
23 2019 to March 13, 2020.  ROCHA-8279 received three payments during this
24 period totaling $587.36. The account was also associated to credit card
25 payments.   Sometime after the F.D.O.V. account was established, the
26 account name was changed to "Natalia Rocha" (ROCHA).   Record checks
27 revealed F.D.O.V. is a real person from Fort Meyers, FL matching the
28 same DOB as used to establish the Delivery Company D account.

76.   **C.A.M.**   On January 29, 2020, a Delivery Company D account for C.A.M. was created using a DOB and an address in San Diego, California. The account was associated with ROCHA-8279.  The account made deliveries from February 5, 2020 to September 23, 2020.  ROCHA-8279 received a payment of $8.00 on February 18, 2020. I believe the likely compensation from accounts such as this one was through referral bonuses and/or a later sale of the account.

77.   **F.G.D.O.**   On March 12, 2020, a Delivery Company D account for F.G.D.O. was created using his date of birth and an address in Bridgewater, MA.  The account was associated to ROCHA-8279. The account made deliveries from March 16, 2020 to October 29, 2020.  ROCHA-8279 received the first five payments totaling $1,837.94.   Record checks revealed that F.D.G.O. is a real person with date of birth corresponding with the one on the account, but associated to an address in San Jose, CA.

78.   **P.L.P.** On March 29, 2020, a Delivery Company D account for P.L.P. using her date of birth was established.   The account was associated with an address in Foster City, CA. The account was associated to ROCHA-8279. The account made deliveries from April 1, 2020 to May 2, 2020. ROCHA-8279 received four payments during this period totaling $803.55. At an unknown date after the account was established, the name associated with the account was changed to "Natalia Rocha" (ROCHA). Records checks revealed P.L.P. with a date of birth corresponding to the one on the account is a real person and is associated with an address in Boise, ID.

79.   **B.K.S.**   On May 8, 2020 a Delivery Company D account for B.K.S. his date of birth was established.   The account was associated to an address in Dallas, TX.   The account was associated to ROCHA-8279. The

1  account made deliveries from May 9, 2020 to June 4, 2020.  ROCHA-8279
2  received a payment of $161.75 on May 19, 2020. The account was also
3  associated to three other bank accounts.  Records checks revealed B.K.S.
4  with a date of birth corresponding to the one on the account is a real
5  person and is associated to an address in Columbus, OH.

6      80.  **M.L.L.  (Count 11).**  On May 28, 2020 a Delivery Company D
7  account for M.L.L. using a date of birth was established. The account
8  was associated with an address in Santa Ana, California. The account was
9  associated with ROCHA-8279. The account made deliveries from June 6,
10 2020 to June 11, 2020. ROCHA-8279 received a payment of $20.00 on June
11 8, 2020. ████████████████████████████████████████

12 ████████████████████████████████████████████████████

13 ██████████████████.  At an unknown date, the account had a name change
14 to Natalia Rocha (ROCHA).  Record checks revealed a M.L.L is a real
15 person with the same date of birth as on this account, but associated
16 to a North Branch, MN address.

17     81.  **C.J.U.**  On July 30, 2020, a Delivery Company C account was
18 created for C.J.U. at 8650 Lake Ashmere Dr Apt 56, San Diego, CA 92119,
19 which is ROCHA and TRULSEN's address.  The Delivery Company C account
20 was set up using C.J.U.'s CADL, but with the driver photo replaced with
21 the image of Subject-4.  The driver selfie also depicts Subject-4. I
22 have reviewed C.J.U.'s true CADL photo and C.J.U. is not the same person
23 as Subject-4.  Notably, C.J.U. is a female, and Subject-4 is a male.

24     82.  **P.A.S.  (Count 14).** On September 3, 2020, a Delivery Company C
25 account was created for P.A.S. at 8650 Lake Ashmere Dr Apt 56, San Diego,
26 CA 92119, which is ROCHA and TRULSEN's address.  The Delivery Company C
27 account was set up using P.A.S.'s CADL, but with the driver photo
28 replaced with the image of ROCHA.  The driver selfie also depicts ROCHA.

1    83.  **J.J.L.**  On September 3, 2020 a Delivery Company D for J.J.L.
2    using her date of birth was established.  The account was associated
3    with ROCHA's home address of 8650 Lake Ashmere Drive #56 San Diego, CA
4    92119.  The account was associated with ROCHA-8279. The account made
5    deliveries from September 4, 2020 to October 5, 2020. ROCHA-8279 received
6    four payments during this period totaling $1,175.77. The account was
7    associated to one other bank account. Record checks revealed J.J.L. is
8    a real person with a date of birth corresponding to the one on the
9    account, but associated to an address in Redwood City, CA.

10   84.  **C.C.K.**  On September 10, 2020, a Delivery Company D account
11   for C.C.K. and her date of birth was established.  The account was
12   associated with ROCHA's home address of 8650 Lake Ashmere Drive #56 San
13   Diego, CA 92119.  The account was associated with ROCHA-8279. The account
14   made deliveries from September 16, 2020 to October 05, 2020.  ROCHA-
15   8279 received the first payment on the account on September 22, 2020
16   for $552.64.  The account was associated to three other back accounts.
17   Records checks revealed C.C.K. is a real person with the date of birth
18   corresponding with the account and associated with an address in El
19   Cajon, CA 92021.

20                **ADDITIONAL FRAUDULENT ACCOUNTS ASSOCIATED WITH TRULSEN**

21   85.  The  investigation  also  revealed  that  ROCHA's  boyfriend,
22   LEONARDO TRULSEN DE OLIVEIRA, had several Delivery Company D accounts
23   in the names and identities of other individuals linked to his Bank of
24   America bank account ("TRULSEN-5179") and deliveries for which TRULSEN
25   received deposits to TRUSLEN-5179.  Much of TRULSEN's activity was
26   centered on Delivery Company D.

27   86.  **J.H. (Count 6).** On February 4, 2020, a Delivery Company D
28   account  was  created  for  J.H.  using  an  address  in  Spring  Valley,

1  California and J.H.'s date of birth. The account was linked to TRULSEN-
2  5179.   Between February 7, 2020 and September 16, 2020, deliveries,
3  including an alcohol delivery, was conducted in the San Diego, California
4  area. Between February 10, 2020 and September 21, 2020, Delivery Company
5  D made deposits totaling $4,260.71 to TRULSEN-5179 and other accounts.
6  TRULSEN received the first six bank deposits.   After March 2020, the
7  account then was linked to another bank account and the remaining
8  deposits went to multiple other bank accounts.   Based on this
9  information, I believe TRULSEN may have initially used this account and
10 then rented and/or sold the account to others.

11 87.  **C.J.C.  (Count 8).** On March 29, 2020, a Delivery Company D
12 account was created for C.J.C. using an address in Foster City,
13 California, and the phone number ending in 9545 ("TRULSEN-9545").   The
14 name associated with the account was later changed to "Leonardo Trulsen"
15 (TRULSEN).  In addition, this account is linked to TRULSEN-5179. Between
16 April 1, 2020 and April 20, 2020, the account was authorized to deliver
17 food and alcohol. Despite the fact that the address on the account was
18 for Foster City, California (Northern California), deliveries were made
19 in the San Diego area, including three alcohol orders.   Between April
20 6, 2020 and April 20, 2020, TRULSEN received three deposits from Delivery
21 Company D totaling $973.99, all to TRULSEN-5179.   Records checks revealed
22 C.J.C. is a real person with the date of birth corresponding to the one
23 on the account but associated with an address in Des Moines, Iowa.

24 88.  **M.E.R.** On April 20, 2020, a Delivery Company D account was
25 created for M.E.R. using an address in Salt Lake City, Utah, and the
26 phone number ending in 9545 ("TRULSEN-TEL-9545").   At an unknown
27 subsequent date, the name associated with the account was changed to
28 "Leonardo Trulsen" (TRULSEN). On March 24, 2021, agents served a subpoena

at Summit Park Village apartment complex located at 8563 Lake Murray Blvd, San Diego, CA 92119, which handles the records for 8650 Lake Ashmere Dr #56, where TRULSEN and ROCHA reside.  In his residential lease application for 8650 Lake Ashmere Dr Apt 56, San Diego, CA, TRULSEN provided his phone number as TRULSEN-TEL-9545.  This is the same phone number on the M.E.R. account with Delivery Company D.  In addition, the account is linked to TRULSEN-5179.  Between April 21, 2020 and July 8, 2020, the account was authorized to deliver food and alcohol. Between April 28, 2020 and October 13, 2020, the account generated $3,979.57 in deposits from Delivery Company D, including 6 deposits to TRULSEN-5179, including the first and the last deposits on the account.  Thus far, agents have been unable to identify if M.E.R. based on the name, address, and date of birth associated to the Delivery Company D account with that name and those identifiers.

89. **J.C.B.**  On July 11, 2020, a Delivery Company D account was created for J.C.B. using an address in Freemont, California. This account is linked to TRULSEN-5179.  Between July 12, 2020 and July 30, 2020, the account was operative.  Between July 13, 2020 and August 3, 2020, TRULSEN received 4 deposits totaling $734.51, all into TRULSEN-5179. Agents queried various databases and identified J.C.B. as an actual individual with the matching date of birth, but living in Lincoln, California.

90. **C.W.**  On July 11, 2020, a Delivery Company D account was created for C.W. using an address in San Jose, California. This account is linked to TRULSEN-5179.  Between August 24, 2020 and August 27, 2020, the account was operative.  On August 31, 2020, TRULSEN received one deposit from Delivery Company D for $330.05 to TRULSEN-5179.

91. **O.O.** On August 3, 2020, a Delivery Company D account was

created for O.O. using an address in San Jose, California. This Dasher account is linked to TRULSEN-5179.  Between August 20, 2020 August 20, 2020, the account was operative. On August 24, 2020, TRULSEN received one deposit of $79.55 to TRULSEN-5179.

92. **R.A.B.** On August 7, 2020, a Delivery Company D account was created for R.A.B. using an address in San Diego, California. This account is linked to TRULSEN-5179.  Between August 9, 2020 August 23, 2020, the account was operative and was authorized to deliver food and alcohol. From August 10, 2020 to August 24, 2020, TRULSEN received three deposits from Delivery Company D totaling $1,134.06 to TRULSEN-5179.

93. **M.D.J.H.D. (Count 7).**  On April 11, 2020, a Delivery Company G account was in the name of M.D.J.H.D.  The account was created with M.D.J.H.D.'s CADL, but with the photo replaced with the photo of DE AVILA.

**AN AGGREGATED LOOK AT THE DATA**

95.   Agents also analyzed the data from bank accounts associated with the conspirators to get an aggregated look at the deposits from the various Rideshare/Delivery Companies. The following are illustrative and not exhaustive.

96.   **DE_AVILA-4858.**  Between 2018 and approximately March 2021, DE AVILA received approximately the following amounts in deposits to DE_AVILA-4858:

| | |
|---|---|
| Rideshare Company B (and affiliated LLC) | $19,423.52 |
| Rideshare Company F | $ 8,139.45 |
| Delivery Company A | $ 5,837.66 |
| Delivery Company C | $11,300.41 |
| Delivery Company D | $ 1,058.73 |
| Delivery Company E | $18,614.83 |
| Delivery Company G | $ 4,618.01 |
| **TOTAL** | **$68,992.61** |

97.   **PEREIRA-9122.**  Between 2018 and approximately April 2021, PEREIRA received approximately the following amounts in deposits to PEREIRA-9122:

Rideshare Company B (and affiliated LLC)      $48,053.01

| | | |
|---|---|---|
| 1 | Rideshare Company F | $ 902.22 |
| 2 | Delivery Company A | $ 409.17 |
| 3 | Delivery Company C | $22,085.13 |
| 4 | Delivery Company D | $ 5,990.14 |
| 5 | Delivery Company E | $ 5,822.72 |
| 6 | Delivery Company G | $ 8,089.81 |
| 7 | **TOTAL** | **$91,352.20** |

**LAUNDERING OF FRAUD PROCEEDS THROUGH ACCOUNTS AND TRANSFERS**

98. As part of this investigation, I obtained DE AVILA's bank statements from his various accounts, including DE_AVILA-4858. In analyzing that account, I discovered a distinct pattern where DE AVILA would receive a deposit from Delivery Company G and thereafter he would make a contemporaneous and corresponding money transfer via peer-to-peer transfer using Zelle to an account listed as "NATALIA," whom I believe to be NATALIA MAGALHAES ROCHA, based on a review of bank statements associated with ROCHA-8279. For example, as an illustration, between June 23, 2020 and August 14, 2020, DE AVILA's DE_AVILA-4858 received 14 deposits in various amounts, ranging from $34.54 to $284.28. Each of these deposits had corresponding Zelle transfers, often in identical or near identical amounts as the deposits, to "NATALIA" on or about the same day or the following day(s) after the deposit from Delivery Company G. I believe these money transfers represent financial transactions meant to conceal and disguise the nature, location, source, ownership, and control of the proceeds and their connection to this fraudulent scheme.

99. I observed a similar phenomenon in connection with deposits to DE_AVILA-4858 from Rideshare Company F. DE AVILA would receive numerous deposits from Rideshare Company F and thereafter he would make

1  a contemporaneous and corresponding money transfer via peer-to-peer
2  transfer using Zelle to an account belonging to an unknown third party.
3  For example, between February 6, 2020 and March 16, 2020, DE AVILA
4  received approximately 30 deposits from Rideshare Company F, ranging
5  from \$110.03 to \$357.06. Each of these deposits had corresponding Zelle
6  transfers, often in identical or near identical amounts as the deposits,
7  to the same unknown third party, on or about the same day or the following
8  day(s) after the deposit from Rideshare Company F. I believe these
9  money transfers represent financial transactions meant to conceal and
10 disguise the nature, location, source, ownership, and control of the
11 proceeds and their connection to this fraudulent scheme.

12      100. I also observed the same pattern with Rideshare Company B
13 involving deposits to DE_AVILA-4858. For example, between May 9, 2019
14 and July 9, 2019, there were numerous almost daily deposits of hundreds
15 of dollars from Rideshare Company B to DE_AVILA-4858. Most of these
16 deposits had corresponding Zelle transfers, often in identical or near
17 identical amounts as the deposits, to the same unknown third party, on
18 or about the same day or the following day(s) after the deposit from
19 Rideshare Company B. I believe these money transfers represent financial
20 transactions meant to conceal and disguise the nature, location, source,
21 ownership, and control of the proceeds and their connection to this
22 fraudulent scheme.

23      101. Moreover, in each of the bank account statements for DE AVILA,
24 PEREIRA, ROCHA, TRULSEN, ███████████ I also observed numerous financial
25 transactions that I believe were made with the intent to promote this
26 fraudulent scheme, for example, to promote the next step in the fraud
27 scheme, *see United States v. Estacio*, 64 F.3d 477, 480-81 (9th Cir.
28 1995), by paying co-conspirators for newly created accounts, from the

proceeds obtained from previously used accounts, by paying co-conspirators to obtain addition stolen identities and identifiers to perpetuate the fraudulent scheme, and to pay for expenses to promote the fraudulent scheme, such as vehicle registrations, car payments, insurance, and gas, to facilitate the obtaining of fraudulent payments from the Rideshare/Delivery Companies using the fraudulent accounts.